United States District Court
For the Northern District of California

1
2
3
4
5                    UNITED STATES DISTRICT COURT
6                    NORTHERN DISTRICT OF CALIFORNIA
7
8   HILDA SOLIS, *Secretary of the United States*          No. C-12-2055 EMC
    *Department of Labor*,
9
                    Plaintiff,                             **ORDER DENYING DEFENDANTS'
10                                                          MOTIONS TO DISMISS**
           v.
11                                                         **(Docket Nos. 18, 32, 35)**
    DENNIS WEBB, *et al.*,
12
                    Defendants.
13   _____/
14
15                    I.    **INTRODUCTION**
16          Plaintiff Hilda L. Solis, the Secretary of the United States Department of Labor
17   ("Secretary"), filed an action under the Employee Retirement Income Security Act of 1974
18   ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.*, on April 25, 2012, against the fiduciaries of an Employee
19   Stock Ownership Plan ("an ESOP") for allegedly causing or permitting an ESOP to purchase stock
20   for more than the stock's fair market value. *See* Compl. (Docket No. 1). Defendants Matthew
21   Fidiam ("Fidiam") and J. Robert Gallucci ("Gallucci") filed a motion to dismiss the Secretary's
22   complaint in its entirety on May 29, 2012. *See* Mathieu Fidiam and J. Robert Gallucci's Motion to
23   Dismiss (Docket No. 18) ("Fidiam & Gallucci's Motion"). Defendant The Parrot Cellular Employee
24   Stock Ownership Plan ("Parrot Cellular ESOP" or "the ESOP") filed its own motion to dismiss on
25   June 26, 2012. *See* The Parrot Cellular Employee Stock Ownership Plan's Motion to Dismiss
26   (Docket No. 32) ("ESOP Motion"). Defendant Dennis Webb ("Webb") joined in part Fidiam and
27   Gallucci's motion on June 26, 2012, *see* Defendant Dennis Webb's Joinder (Docket No. 33), and
28

1   filed his own motion to dismiss on the same day, *see* Motion to Dismiss Complaint on Behalf of

2   Dennis Webb (Docket No. 35) ("Webb's Motion").

3     Defendant Consulting Fiduciaries, Inc. ("CFI"), the last of the named Defendants, has not

4   filed its own motion to dismiss, nor joined to any of the three motions now pending, but instead filed

5   an Answer to the Complaint on July 10, 2012. *See* Answer (Docket No. 43). Having considered

6   these three motions, all papers that are related thereto, and the argument of counsel, the Court hereby

7   **DENIES** all three motions.

8   **II.**   **FACTUAL & PROCEDURAL BACKGROUND**

9     The Secretary alleges the following facts in her complaint. Throughout the time relevant to

10   this action, Webb served as an officer and director of Entrepreneurial Ventures, Inc. ("EVI"), a

11   company which conducted and/or conducts business as "Parrot Cellular" and sponsored the subject

12   ESOP.[1] Compl. ¶ 6. Fidiam and Gallucci also served as officers and directors of EVI, as well as

13   members of the ESOP's "Plan Committee." *Id.* ¶¶ 7-8. Among these individuals, Webb owned

14   250,000 shares of EVI (a 60.42% stake) and Fidiam owned 41,250 shares (a 9.97% stake) prior to

15   the funding of the ESOP. *Id.* ¶¶ 6-7, 34. A third individual not party to this suit named Chad Webb

16   (Dennis Webb's son) owned the final 122,500 shares of EVI (a 29.61% stake). *Id.* ¶ 34. CFI served

17   as the "independent fiduciary and investment manager" for the ESOP. *Id.* ¶ 9.

18     At some point "around 1999 or 2000," EVI began taking steps to create an ESOP to purchase

19   EVI. *Id.* ¶ 11. The ESOP that is the subject of this suit "was established by EVI effective July 1,

20   2001," and was at that time known as the "Parrot Cellular Employee Stock Ownership Plan and

21   Money Purchase Plan." *Id.* ¶ 10; *See also* Declaration of J. Robert Gallucci (Docket No. 18-1)

22   ("Gallucci Decl."), Ex. A at 1. The original plan consisted of two component parts, a Stock Bonus

23   Plan and a Money Purchase Pension Plan, but these components were merged and renamed into their

24   present form when EVI amended and restated the Plan on July 1, 2004. Compl. ¶ 10.

25

26

27     [1] An ESOP (Employee Stock Ownership Plan) is an individual account plan held by an

28   employee which is "designed to invest primarily in qualifying employer securities." 29 U.S.C. § 1107(d)(6)(A).

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

In June of 2002, a third-party administration firm contracted with EVI to design and implement provisions of the ESOP to facilitate the purchase of EVI's stock. *Id.* ¶¶ 11-12. On June 30, 2002, EVI's Board of Directors adopted the "2002 Plan Document" prepared by the third-party administration firm, and appointed Fidiam and Gallucci as the ESOP's trustees and sole members of the "Plan Committee." *Id.* ¶ 13. The 2002 Plan Document "outlines the duties and responsibilities of EVI's Board of Directors regarding the ESOP," as well as the "duties and responsibilities of the Plan Committee," the latter of which is designated as a "named fiduciary" of the ESOP under ERISA. *Id.* ¶¶ 14-15. The 2002 Plan Document also permits the Plan Committee to "designate other persons who are not named fiduciaries to carry out its fiduciary duties" by themselves becoming "a fiduciary under the Plan." *Id.* ¶ 15. The Secretary alleges that Webb, Fidiam, and Gallucci were all fiduciaries of the ESOP "by virtue of their authority under the [2002] Plan Document," which granted them power to exercise discretionary authority, control, or responsibility over the management and administration of the Plan and the Plan's assets. *See* Compl. ¶¶ 14-18. Further, the Secretary alleges that Fidiam and Gallucci were "named fiduciaries" under ERISA by virtue of their membership on the Plan Committee. *Id.* ¶ 19.

On September 27, 2002, EVI and the ESOP's designated trustees (Fidiam and Gallucci) signed an engagement letter with CFI, appointing CFI as the Independent Fiduciary and Investment Manager for the Plan "with respect to the stock purchase transactions at issue in this case." *Id.* ¶ 22. Using a third-party appraisal service retained by Webb,[2] EVI received appraisal reports on April 30 and July 31, 2002, valuing 100% of EVI's shares at $31,162,000. *Id.* ¶ 30. A subsequent appraisal report on November 21, 2002, placed the value of 100% of EVI's shares at $31,449,000. *Id.* The third-party appraisal service issued a letter on the same day as the November 21st appraisal stating that the Plan's contemplated purchase of EVI's stock at the appraised value was "fair and reasonable

---

[2] According to the Secretary's complaint, Webb, on behalf of EVI, "retained a firm that serves as a 'registry' of independent contractor appraisers" in order to obtain an appraisal of EVI's stock. Compl. ¶ 25. The Secretary alleges that Webb "was solely responsible" for selecting this firm, who "subcontracted this appraisal work" to yet another party "for EVI's appraisals." *Id.* ¶ 26. She further alleges that "Webb and Fidiam were not involved in the selection of the [subcontractor] Appraiser," and that "CFI did not know who selected the Registry or how it assigned work to the Appraiser." *Id.*

**United States District Court**

For the Northern District of California

to the ESOP and its participants," and the "ESOP will not be paying more than adequate consideration to acquire the shares of Company stock." *Id.* ¶ 32.  "After reviewing the appraisal and other transactional documents, CFI directed Defendants Fidiam and Gallucci, as the ESOP trustees, to purchase . . . EVI stock on behalf of the ESOP," which they did "without question." *Id.* ¶ 33.

The ESOP acquired 90.03% of EVI's shares on November 21, 2002, at $76.01 per share for a total cost of $28,313,718.  *Id.* ¶ 36.  To finance the transaction, the ESOP borrowed $15,892,620 from EVI – a sum which EVI had itself borrowed from Heritage Bank of Commerce on November 19, 2002.  *Id.* ¶ 35.  The ESOP paid the balance of the purchase price by issuing promissory notes to Dennis and Chad Webb for  $11,596,962 on the day of the transaction, and by using a $824,136 cash payment from EVI "constituting the initial EVI contribution to pay down the ESOP's debt." *Id.* ¶ 37.

The Secretary alleges that the ESOP's purchase of EVI's stock was completed at an amount "far higher than actual fair market value" and as a result "the ESOP paid more than adequate consideration for its EVI stock." *Id.* ¶ 42.  This allegation is premised on the fact that CFI's appraisals of EVI's market value contained a number of "flaws and inaccuracies." *Id.*; *see also* Compl. ¶¶ 40-41 (listing appraisal deficiencies).  Chief among these deficiencies are the fact that the "appraisal report did not consider a prior valuation of EVI" from 2001 that set its market value at $7,300,000.  *Id.* ¶ 41.  Nor did the appraisal report account for a $12 million deferred compensation agreement and a $4 million deferred compensation payment, both payable to Webb and executed by EVI between June and November 2002, prior to the ESOP's purchase of EVI stock, that had the effect of reducing "the value of EVI and hence . . . the value of the ESOP's EVI stock." *Id.* ¶¶ 39-41, 45-46, 55-56.

The Secretary thereafter filed her action against the Defendants on April 25, 2012, alleging that their acts in connection with the ESOP's purchase of EVI's stock violated multiple provisions of ERISA.  *See* Compl. ¶¶ 63-67.  As against Defendants Fidiam and Gallucci, she charges that "as fiduciaries, they had a duty to act prudently and solely in the interests of the ESOP and its participants and beneficiaries." *Id.* ¶ 58.  In breach of this duty, these two Defendants "failed to oppose the $4 million payment to Defendant Webb and the $12 million agreement with Defendant

1  Webb," and failed "to take any action , including . . . a corporate shareholder action, to stop the $4

2  million payment . . . or to recoup that payment, and they failed to take any steps to invalidate the $12

3  million" deferred compensation agreement with Webb.  *Id*. ¶ 58.  As against Defendant Webb, she

4  charges that "he had a duty to act prudently and solely in the interests of the ESOP and its

5  participants and beneficiaries, but he chose instead to act in his own self interest by agreeing to a $4

6  million payment and a $12 million deferred compensation agreement from EVI that harmed the

7  ESOP by reducing the value of the ESOP's EVI stock."  *Id*. ¶ 59.  As against Defendant CFI, she

8  charges that it relied on an unsound appraisal and "failed to adequately understand the

9  methodologies used, the factual bases relied upon, and the conclusions reached in the appraisal, and

10  therefore improperly directed the ESOP trustees to purchase EVI stock from Defendant Webb at a

11  price in excess of fair market value."  *Id*. ¶ 60.  Finally, regarding Webb, Fidiam, and Gallucci, she

12  charges that they collectively "failed to prudently monitor, oversee or remove the independent

13  fiduciary, CFI, which they had appointed or had responsibility to oversee pursuant to the [2002] Plan

14  Document;" regarding Fidiam and Gallucci in particular, they improperly acquiesced "in accepting .

15  . . improper direction from [CFI] to purchase EVI stock on behalf of the ESOP for more than fair

16  market value."  *Id*. ¶ 61.  The Defendants thereafter filed the three Motions to Dismiss that are the

17  subject of this Order.

18                                    **III.   DISCUSSION**

19  A.       Statutory Background

20         "ERISA is a comprehensive statute designed to promote the interests of employees and their

21  beneficiaries in employee benefit plans."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).  It is

22  a "remedial statute" that has "broadly protective purposes."  *See Scott v. Gulf Oil Corp.*, 754 F.2d

23  1499, 1501 (9th Cir. 1985); *John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank*, 510 U.S.

24  86, 96 (1993).  ERISA establishes certain "minimum standards . . . assuring the equitable character

25  of [benefit] plans and their financial soundness."  29 U.S.C. § 1001(a).  In order to protect "the

26  interests of participants in employee benefit plans and their beneficiaries," 29 U.S.C. § 1001(b),

27  ERISA imposes "standards of conduct, responsibility, and obligation for fiduciaries of employee

28

benefit plans," including "a duty of loyalty and a duty of care," *Donovan v. Cunningham*, 716 F.2d 1455, 1464 (5th Cir. 1983).

Section 1107(d)(6) of ERISA[3] specifically addresses the creation of ESOPs, which are a type of ERISA plan "designed to invest primarily in" the stock of the employer who created it.  29 U.S.C. § 1107(d)(6)(A).  The Fifth Circuit has observed that "[t]he ESOP concept is the brainchild of Louis O. Kelso, who has advanced it as a device for expanding the national capital base among employees – an effective merger of the roles of capitalist and worker."  *Donovan*, 716 F.2d at 1458; *see also Edgar v. Avaya, Inc*., 503 F.3d 340, 346 (3rd Cir.2007) ("Congress expressly intended that the ESOP would be both an employee retirement benefit plan and a technique of corporate finance that would encourage employee ownership.") (internal quotation omitted).  The *Donovan* court provided the following "thumbnail sketch of basic ESOP mechanics:"

> An employer desiring to set up an ESOP will execute a written document to define the terms of the plan and the rights of beneficiaries under it.  29 U.S.C. § 1102(a) (1976).  The plan document must provide for one or more named fiduciaries "to control and manage the operation and administration of the plan."  *Id.,* § 1102(a)(1).  A trust will be established to hold the assets of the ESOP.  *Id.,* § 1103(a).  The employer may then make tax-deductible contributions to the plan in the form of its own stock or cash.  If cash is contributed, the ESOP then purchases stock in the sponsoring company, either from the company itself or from existing shareholders.  Unlike other ERISA-covered plans, an ESOP may also borrow in order to invest in the employer's stock.  In that event, the employer's cash contributions to the ESOP would be used to retire the debt.

*Donovan*, 716 F.2d at 1459.  With this understanding of ESOPs in mind, we now turn to the Defendants' motions.

B.    Motion to Dismiss – Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the

---

[3] Citations to sections of ERISA in this Order refer to their place of codification in the U.S. Code.

United States District Court

For the Northern District of California

1    nonmoving party, although "conclusory allegations of law and unwarranted inferences are

2    insufficient to avoid a Rule 12(b)(6) dismissal." *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir.

3    2009). Thus, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

4    more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

5    not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

6        At issue in a 12(b)(6) analysis is "not whether a plaintiff will ultimately prevail, but whether

7    the claimant is entitled to offer evidence to support the claims" advanced in his or her complaint.

8    *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). While "a complaint need not contain detailed factual

9    allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'"

10   *Cousins*, 568 F.3d at 1067 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads

11   factual content that allows the court to draw the reasonable inference that the defendant is liable for

12   the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009); *see also Bell Atl. Corp. v.*

13   *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but

14   it asks for more than sheer possibility that a defendant acted unlawfully." *Id.*

15       In ruling on a motion to dismiss, a court may look to documents whose contents are

16   specifically alleged as part of a complaint, even though the plaintiff did not append them to the

17   complaint. "Generally, a district court may not consider any material beyond the pleadings in ruling

18   on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555

19   n. 19 (9th Cir.1990). "However, material which is properly submitted as part of the complaint may

20   be considered" on such a motion. *Hal Roach Studios*, 896 F.2d at 1555 Fn. 19. The Ninth Circuit

21   has stated that "a document is not "outside" the complaint if the complaint specifically refers to the

22   document and if its authenticity is not questioned. *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir.

23   1994) *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.

24   2002) (citing *Townsend v. Columbia Operations,* 667 F.2d 844, 848-49 (9th Cir.1982)).

25   "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions,

26   but which are not physically attached to the pleading, may be considered in ruling on a Rule

27   12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d at 454. This case presents just such a

28   situation. Both parties have made numerous references to the ESOP's Plan documents in the

United States District Court

For the Northern District of California

1    Complaint, in the three pending motions, and at oral argument.  Accordingly, it is appropriate for

2    this Court to consider the Plan documents in ruling on Defendants' three motions to dismiss.

3    C.    Fidiam & Gallucci's Motion to Dismiss –Principal Arguments

4         Defendants Fidiam and Gallucci's motion to dismiss asks this Court to dismiss the

5    Secretary's complaint as to these two Defendants in its entirety under Rule 12(b)(6).  *See* Fidiam &

6    Gallucci's Motion at 1.  Defendant Webb has joined all arguments made in Fidiam and Gallucci's

7    motion "except for the argument that Defendants Fidiam and Gallucci are not liable for following

8    the investment directions of CFI because they were directed trustees, which does not apply to

9    Webb."  *See* Webb's Joinder at 1.  The motion advances two principal arguments:  (1) that they are

10   not subject to liability under ERISA because they were not fiduciaries under ERISA until after the

11   Plan was funded, and the activities complained of by the Secretary took place prior to the Plan's

12   funding, and (2) that they were "directed trustees" under ERISA who had no independent fiduciary

13   duty to the Plan or its beneficiaries when the ESOP purchased EVI stock.  Each argument will be

14   considered in turn.

15        1.    Fiduciary Duties Before Funding of ESOP

16        Fidiam and Gallucci's motion argues in the main that they are cannot be held liable as

17   fiduciaries under ERISA for transactions that took place before Nov 21, 2002.  The two "business

18   transactions" referred to by Fidiam and Gallucci are the $ 4 million deferred compensation payment

19   to Webb that transpired on June 25, 2002, and the $ 12 million deferred compensation agreement

20   executed by EVI and Webb on October 15, 2002, and restated on November 21, 2002.  Fidiam and

21   Gallucci argue they cannot be held liable because "the ESOP had not yet been funded, and as such,

22   the ESOP did not exist at the time of these two business transactions," and therefore "neither Mr.

23   Fidiam nor Mr. Gallucci could act as an ERISA fiduciary to the ESOP nor could they take any

24   action to harm the ESOP's nonexistent assets."  Fidiam & Gallucci's Motion at 16-17.  They cite

25   language in ERISA's definition of an ESOP, 29 U.S.C. § 1107 (d)(6), which states that an ESOP is

26   in pertinent part "a stock bonus plan which is *qualified*, or a stock bonus plan and money purchase

27   plan both of which are *qualified*, under section 401 of Title 26" of the U.S. Code.  Fidiam &

28   Gallucci's Motion at 12 (emphasis added).  That citation refers to a provision in the Internal

United States District Court

For the Northern District of California

Revenue Code which sets out requirements for qualified pension, profit-sharing, and stock bonus plans, and states that "[a] trust created or organized in the United States and forming part of a stock bonus, pension, or profit-sharing plan of an employer for the exclusive benefit of his employees or their beneficiaries shall constitute a qualified trust under this section . . ." 26 U.S.C. § 401(a). Using the Internal Revenue Code's reference to the "trust," these Defendants refer to the common law of trusts for the proposition that "a trust cannot be created unless there is trust property." *See* Fidiam & Gallucci's Motion at 14 (citing the Restatement (Second) of Trusts). Since "no Parrot Cellular ESOP existed until the Stock Bonus Plan part of the Retirement Plan was funded by the Employer's contribution of EVI stock on November 21, 2002," Fidiam & Gallucci's Motion at 13, Defendants argue "the ESOP was not in existence at the time of either payment to Mr. Webb," and therefore "there can be no fiduciary breach." *Id*. at 16. Defendant's syllogism misconstrues the nature of fiduciary responsibility under ERISA.

It cannot seriously be questioned that the Parrot Cellular Employee Stock Ownership Plan is an "employee pension benefit plan" covered by the terms of ERISA, of which ESOPs are a subset. ERISA defines an "employee pension benefit plan" as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program (i) provides retirement income to employees, or (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

29 U.S.C. § 1002(2)(A). The terms of the Parrot Cellular Employee Stock Ownership Plan clearly fall within this definition. *See Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (holding that an ESOP plan is subject to general "employee pension benefit plan" ERISA provisions); *Donovan*, 716 F.2d at 1463-65 (same). Provisions in the 2002 Plan Document clearly indicate EVI's understanding that the ESOP at issue here would be subject to ERISA. *See e.g.* Gallucci Decl., Ex. A at 55 ("The Company shall administer the Plan and is designated as the "Plan Administrator" within the meaning of Section 3(16) of ERISA), Ex. A at 57 ("Compliance with record keeping and

1    reporting requirements of ERISA shall be the primary responsibility of the Company."); Ex. A at 29

2    ("The Committee shall furnish each Participant . . . with a summary annual report of the Plan in such

3    form and at such times as required by Section 104(b)(3) of ERISA.").

4              Defendants' arguments that the Internal Revenue Code or the common law of trusts

5    determine the existence of an ERISA plan, and along with it, the emergence of fiduciary duties, is

6    unavailing.  Faced with a similar argument, a district court in Wisconsin rejected the notion that

7    qualified tax status under the Internal Revenue Code marked the existence or non-existence of an

8    ERISA covered ESOP.  *See Freund v. Marshall and Ilsley Bank*, 485 F. Supp. 629, 633

9    (W.D.Wis.1979) (Title I of ERISA applies by its terms to all employee benefit plans within the

10   meaning of § 1002(2) and (3), without regard to tax qualification); *see also Donovan v. Shaw*, 668

11   F.2d 985, 990 (8th Cir. 1982) (citing *Freund* and noting same).  Further, the Supreme Court's

12   decision in *Hughes Aircraft Co. v. Jacobson* rejected the general applicability of the sort of common

13   law trust theory Defendants advance here.  The Court held that "because ERISA is a comprehensive

14   and reticulated statute, and is enormously complex and detailed, it should not be supplemented by

15   extratextual remedies, such as the common-law [trust] doctrines . . ."  *Hughes Aircraft Co. v.

16   Jacobson*, 525 U.S. 432, 447 (1999) (internal citations and quotations omitted).  The Court, in *Varity

17   Corp. v. Howe*, three years earlier had noted how "ERISA's standards and procedural protections

18   partly reflect a congressional determination that the common law of trusts did not offer completely

19   satisfactory protection," and presented its opinion:

20                    [T]hat the law of trusts often will inform, but will not necessarily
                      determine the outcome of, an effort to interpret ERISA's fiduciary
21                    duties. In some instances, trust law will offer only a starting point,
                      after which courts must go on to ask whether, or to what extent, the
22                    language of the statute, its structure, or its purposes require departing
                      from common-law trust requirements.
23

24   *Varity Corp. v. Howe*, 516 U.S. 489, 497 (1996).  Here, it is clear that the language of the statute

25   requires a departure from the common law of trusts insofar as it would frustrate Congress' explicit

26   desire to cast as fiduciaries those who act to initially fund an ESOP and thereby absolve them of

27   their duty to ensure that the ESOP acquires employer securities for "adequate consideration."

28

United States District Court

For the Northern District of California

1    Hence, the existence of an ESOP and the vesting of fiduciary duties in respect thereto does not

2    necessarily depend on the date of the ESOP's funding.

3        Indeed, as the Secretary's citation to *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982)

4    (en banc), points out, an ERISA plan and ERISA fiduciary responsibilities thereunder, can exist

5    even where a formal employee benefit plan had not been adopted.  *Donovan v. Dillingham*, 688 F.2d

6    at 1373 ("a 'plan, fund, or program' under ERISA is established if from the surrounding

7    circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the

8    source of financing, and procedures for receiving benefits.").  *Dillingham* has been cited favorably

9    by the Ninth Circuit, *see, e.g., Cinelli v. Sec. Pac. Corp.*, 61 F.3d 1437, 1442 (9th Cir. 1995).  In this

10   case, EVI adopted a formal document outlining the terms of its ESOP in June of 2002, prior to

11   funding on November 21, 2002.  *A fortiori*, the ESOP existed before November, 2002.

12       Defendants' position that no fiduciary duty to the ESOP obtains even when an ESOP has

13   been legally and formally established and fiduciaries named is similarly meritless.  For instance, if

14   an ESOP were formally established and a named fiduciary obligated the ESOP by contract to a self-

15   dealing transaction in violation of § 1106(b)(3), a breach of fiduciary duty would obtain even if the

16   ESOP had not yet been funded.  When pressed with this hypothetical at oral argument, Defendants

17   had no response.[4]

18       In any event, because the Court holds that the breach of fiduciary duty, if any, did not occur

19   here until the ESOP's purchase of the EVI stock on November 21, 2002, the dispute over whether

20   Defendants had fiduciary duty to the ESOP prior that date is moot.  EVI's deferred compensation

21   commitment made to Webb caused no harm to the ESOP and breached no statutory duty until the

22   ESOP acquired EVI for more than fair market value.  As described below, it is only at that moment

23   that a violation of § 1108(e) could have occurred.  Had EVI stock been properly appraised and

24

25   _____

26       [4] Defendants' citation to the Ninth Circuit's decision in *Cline v. Indus. Maint. Eng'g &
     Contracting Co.* is inapplicable to the case at bar.  While the Ninth Circuit panel in *Cline* held that
27   "[u]ntil the employer pays the employer contributions over to the plan, the contributions do not
     become plan assets over which fiduciaries of the plan have a fiduciary obligation," 200 F.3d 1223,
28   1234 (9th Cir. 2000), that holding does not prevent the attachment of other fiduciary duties
     independent of specific plan assets.

**United States District Court**

For the Northern District of California

1  adequate consideration paid by the ESOP on November 21, 2002 (reflecting its true market value),

2  there would be no harm or breach.

3       The Court thus focuses on the scope of fiduciary duties relative to the ESOP's acquisition of

4  EVI stock in November, 2002.

5       2.    "Duty to Acquire Stock for Adequate Consideration"

6       Ninth Circuit precedent construes ERISA fiduciary status "liberally, consistent with ERISA's

7  policies and objectives." *Johnson*, 572 F.3d at 1076 (citing *Ariz. State Carpenters Pension Trust*

8  *Fund v. Citibank*, 125 F.3d 715, 720 (9th Cir.1997)).  ERISA itself  "defines 'fiduciary' not in terms

9  of formal trusteeship, but in *functional* terms of control and authority over [a] plan." *Mertens v.*

10  *Hewitt Assocs.,* 508 U.S. 248, 262 (1993).  Under ERISA's statutory provisions, ESOP fiduciaries

11  include not only those individuals specifically named in an employee benefit plan, 29 U.S.C. §

12  1102(a), but also any individual who "exercises any discretionary authority or discretionary control

13  respecting management of such plan or exercises any authority or control respecting management or

14  disposition of its assets," 29 U.S.C. § 1002(21)(A)(I).

15       "[T]he statute includes a comprehensive scheme of both general and specific provisions

16  regulating the conduct of fiduciaries," with provisions relating to the general responsibilities of all

17  fiduciaries of  "employee pension benefit plans" appearing in § 1104, and additional specific

18  responsibilities concerning the fiduciaries of certain plans including ESOPs appearing in § 1106-

19  1108.  *Donovan*, 716 F.2d at 1463-65.  Among the general provisions are duties that a fiduciary

20  must act for the exclusive benefit of plan beneficiaries, 29 U.S.C. § 1104(a)(1), and must act "with

21  the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man

22  acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a

23  like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  The Ninth Circuit has characterized

24  these duties as the "highest known to the law." *Howard v. Shay*, 100 F.3d at 1488.

25       "As a supplement to the general duties imposed on fiduciaries by [§ 1104], ERISA also

26  incorporates a detailed list of specifically prohibited transactions," and these "prohibited transaction

27  rules are an important part of Congress's effort to tailor traditional judge-made trust law to fit the

28  activities of fiduciaries functioning in the special context of employee benefit plans." *Donovan*, 716

**United States District Court**

For the Northern District of California

F.2d at 1464.  One of these specifically prohibited transactions makes it unlawful for a fiduciary to engage in 'self-dealing:' "A fiduciary with respect to a plan shall not ... (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries."  29 U.S.C. § 1106(b).  ERISA contains a statutory exemption to this restriction with respect to ESOPs, permitting "the acquisition or sale by a plan of qualifying employer securities ... (1) if such acquisition [or] sale . . . is for adequate consideration." 29 U.S.C. § 1108(e).

As noted above, the crux of the Secretary's complaint is that the fiduciaries to the ESOP, including Fidiam and Gallucci, purchased EVI stock from Webb at a price in excess of fair market value in violation of ERISA's statutory mandate that the acquisition of such stock be for the "adequate consideration."  Compl. ¶ 60.  *See Reich v. Hall Holding Co.*, 990 F. Supp. 955, 960 (N.D. Ohio 1998) *aff'd sub nom. Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002) (holding that during an initial acquisition of employer stock, "ERISA explicitly requires the plan's fiduciaries to ensure that the stock is purchased for "adequate consideration" by conducting an independent investigation to determine the fair market value of the to-be-acquired securities.").  She bases this assertion on the belief that CFI's direction to purchase the stock at $76.01 per share on November 21, 2002, was based on an incorrect appraisal that did not take into account $16 million in deferred compensation awarded to Webb, which "reduced the value of the stock."  Compl. ¶ 61. It is from this transaction that the Secretary's theories of liability extend to these two Defendants. Both Defendants were "named fiduciaries" under ERISA by virtue of their membership on the Plan Committee.[5]  Compl. ¶ 13.  They, therefore, had a fiduciary duty to ensure that the ESOP's

---

[5]  Defendants erroneously assert that CFI, and not either of them, is the "named fiduciary" of the ESOP.  *See* Fidiam & Gallucci's Motion at 22.  Section 18(a)(2)(A) of the 2002 Plan Document, addressing the responsibilities of the "Plan Committee" clearly indicates that "[t]he Committee and the Company shall each be a "named fiduciary" within the meaning of Section 402 [§1002] of ERISA."  Gallucci Decl., Ex. A at 55.  That Fidiam and Gallucci were members of the "Plan Committee" on November 21, 2002, when the ESOP purchased EVI's stock is uncontested.  As the Secretary points out in her opposition brief, CFI as the "investment manager" for the ESOP could not have been a "named fiduciary," since under ERISA the "term 'investment manager' means any fiduciary (*other than a trustee or named fiduciary*, as defined in section 1102(a)(2) of this title . . ." 29 U.S.C. § 1002(38) (emphasis added).  Thus, Fidiam and Gallucci were each a "named fiduciary" at the time of the stock purchase at issue.

**United States District Court**
For the Northern District of California

acquisition of employer securities was transacted for "adequate consideration." 29 U.S.C. § 1108(e). "A fiduciary who engages in a self-dealing transaction pursuant to 29 U.S.C. § 1108(e) has the burden of proving that he fulfilled his duties of care and loyalty and that the ESOP received adequate consideration." *Howard v. Shay*, 100 F.3d at 1488 (citations omitted). This burden is a "heavy one"; "[w]hen it is 'possible to question the fiduciaries' loyalty, they are obliged at a minimum to engage in an intensive and scrupulous independent investigation of their options to insure that they act in the best interests of the plan beneficiaries.'" *Howard*, at 1488 (quoting *Leigh v. Engle,* 727 F.2d 113, 125-26 (7th Cir.1984)).

In the case at bar, the complaint alleges with sufficient specificity why the price paid by the ESOP for EVI stock exceeded fair market value in violation of § 1108(e). The appraisal used to value EVI's stock at $76.01 per share on November 21, 2002, allegedly contained "significant flaws and inaccuracies that would have been uncovered during a thorough and objective review and analysis." Compl. ¶ 40. Among the "flaws and inaccuracies" alleged were the failure to consider either a prior valuation of EVI from 2001 that set its market value at $7,300,000, or Webb's existing $12 million deferred compensation agreement and prior $4 million deferred compensation payment, both of which had the effect of reducing "the value of EVI and hence . . . the value of the ESOP's EVI stock." *See Id*. ¶¶ 39-41, 45-46, 55-56. Thus, when the ESOP acquired 90.03% of EVI's shares on November 21 for a total cost of $28,313,718, it allegedly paid an amount "far higher than actual fair market value," and therefore "paid more than adequate consideration for its EVI stock" in violation of § 1108(e). *Id*. ¶¶ 36, 42. Taking these allegations as true, which a court must on a motion to dismiss, the Secretary has adequately stated a claim that Fidiam and Gallucci breached their fiduciary duties under ERISA.

3.      Limitations on Fiduciary Liability

Fidiam and Gallucci argue that they cannot be held liable for any breach of fiduciary duties connected with the purchasing of EVI stock for the ESOP because, consistent with the ESOP's Plan Document and ERISA, they had allocated or delegated their fiduciary responsibilities to another party. *See* Fidiam and Gallucci Motion at 20-21. They assert that, pursuant to §1103(a) and Section 18 of the 2002 Plan Document, they had appointed an investment manager and/or were subject to

United States District Court
For the Northern District of California

the direction of another fiduciary with regard to the stock purchase, and by doing so are shielded from any liability flowing from the acts or omissions of these third party fiduciaries, as provided in § 1105 and Section 18 of the Plan Document. *See id.* at 20-22.  While, as they assert, "the responsibilities of the trustee are correspondingly lessened" with the delegation of fiduciary duties to a third party, they are not extinguished.  Indeed, ERISA cases on this subject make clear that delegations of this sort not only preserve certain fiduciary responsibilities with the original party, but they also give rise to a new duty – a duty to monitor the performance of third party delegatees.  As developed *infra*, Defendants' delegation arguments misstate their potential for liability under ERISA.

a.   <u>Identifying ERISA Fiduciaries</u>

An ERISA fiduciary is "anyone who exercises discretionary authority or control respecting the management or administration of an employee benefit plan." *Arizona State Carpenters Pension Trust Fund v. Citibank (Arizona)*, 125 F.3d 715, 720 (9th Cir. 1997) (quoting *Kyle Rys., Inc. v. Pacific Admin. Serv., Inc.,* 990 F.2d 513, 516 (9th Cir.1993)).  The statute "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan, *see* 29 U.S.C. § 1002(21)(A), thus expanding the universe of persons subject to fiduciary duties-and to damages-under § [1109](a)." *Id.* (quoting *Mertens v. Hewitt Assoc.,* 508 U.S. 248, 262 (1993) (emphasis omitted)).

Generally, ERISA holds fiduciaries to the "prudent man" standard of care.  Section 1104 (a)(1) defines this standard in relevant part as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and--
>
> > (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan;
> >
> > (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;
>
> . . .

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III of this chapter.

In this matter, the Secretary has alleged that Dennis Webb, Matthew Fidiam, and J. Robert Gallucci were all plan fiduciaries by virtue of their service on EVI's Board of Directors because, under the 2002 Plan Document, each of them exercised some modicum of "discretionary authority or discretionary control respecting management of such plan or exercise[d] any authority or control respecting management or disposition of its assets," and had "discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i) and (iii); *see* Compl. ¶¶ 14-18. Specifically, as members of the Board of Directors, these three Defendants were:

> responsible for, among other things, making decisions with respect to the selection, retention, or removal of the Trustee and the Plan Committee and periodically reviewing the performance of the Trustee, the performance of the members of the Plan Committee, and the performance of persons to whom duties have been allocated or delegated and of any advisers appointed by the Board of Directors, the Plan Committee, or their delegees.

Compl. ¶ 14.

Further, the Secretary alleges that as the sole members of the ESOP's Plan Committee, Fidiam and Gallucci were also "named fiduciaries" under ERISA and the 2002 Plan Document, as well as designated trustees of the ESOP. Compl. ¶ 19. In this capacity, they were responsible for:

> reviewing periodically any allocation or delegation of duties and responsibilities and any appointment of advisers, investing and controlling the Plan assets, directing the Trustee with respect to voting shares of Company Stock, interpreting and construing the terms of the Plan and Trust Agreement, and selecting, retaining and monitoring the Independent Appraiser. The Plan Committee must also periodically review the investment of Plan assets and the performance of the Trustees and any investment managers and must advise the Board of Directors of any matters which might be relevant to the decision as to whether the services of the Trustee should be retained.

Compl. ¶ 15.

### b. Directed Trustee

Fidiam and Gallucci assert that they cannot be liable for any breach of fiduciary duty connected to the ESOP's purchase of EVI's stock because they served as "directed trustees" during

1    the transaction.  They argue that acting as "directed trustees," ERISA absolved them of any residual

2    independent fiduciary duty to the Plan or its beneficiaries.

3         Section 1103(a)(1) permits an ERISA plan to subject its trustees to the "proper directions" of

4    a named fiduciary so long as those directions "are made in accordance with the terms of the plan"

5    and "are not contrary" to ERISA.[6]  Section 18(g) of the 2002 Plan Document specified that "[an]

6    Independent Fiduciary may be appointed" and, if appointed, "shall be granted such power, authority

7    and discretion as may be necessary and appropriate for it to carry out its duties and responsibilities."

8    Gallucci Decl., Ex. A at 62-63.  Fidiam and Gallucci maintain that "CFI was...appointed to act as the

9    Independent Fiduciary for the Plan with respect to the stock purchase transaction at issue in this

10   case."  Fidiam and Gallucci Motion at 22 (quoting Compl. ¶ 22) (internal quotation marks omitted).

11   On these facts, they argue that the Secretary cannot state a claim for breach against them with

12   respect to the funding of the ESOP because they acted at the direction of CFI, the Independent

13   Fiduciary.

14        Normally, "ERISA relieves a trustee from fiduciary obligations regarding the management

15   and control of a plan's assets when the trustee is 'directed' by the plan's designated fiduciaries."

16   *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004).  "Directed trustees, as a

17   result, cannot be held liable for following the investment instructions provided by a plan's named

18   fiduciaries."  *Id*.  However, where a directed trustee knows that instructions of a named fiduciary are

19   contrary to ERISA and, despite that knowledge follows the instructions nonetheless, he does so at

20   his own peril, and the statute will not absolve him of fiduciary liability.

21        ERISA's co-fiduciary liability section makes clear that, although trustees may be subject to

22   the direction of a named fiduciary pursuant to § 1103(a)(1), they are nonetheless liable for their

23   _____

24        [6]  In full, this provision places "exclusive authority and discretion to manage and control the
     assets of the plan," except where:

25             the plan expressly provides that the trustee or trustees are subject to
              the direction of a named fiduciary who is not a trustee, in which case
26            the trustees shall be subject to proper directions of such fiduciary
              which are made in accordance with the terms of the plan and which
27            are not contrary to this chapter.

28   29 U.S.C. § 1103(a)(1).

**United States District Court**
For the Northern District of California

1  directed acts when such acts are not in accordance with a plan's governing documents or are

2  contrary to the terms of ERISA.  Section 1105(a) and (a)(1) provide that:

> In addition to any liability which he may have under any other provisions of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
>
> > (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;

8  29 U.S.C. § 1105(a).

9  Accordingly, in *Koch v. Dwyer*, 1999 WL 528181, (S.D.N.Y. July 22, 1999) (cited with

10  approval in *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1102 (9th Cir. 2004)), a district

11  court in the Southern District of New York denied a directed trustee's motion to dismiss a fiduciary

12  breach claim where plaintiffs alleged that the directed trustee followed the instructions of a named

13  fiduciary despite knowledge that doing so would violate the terms of ERISA.  The court held if the

14  facts in that case ultimately showed the directed trustee was "aware that the direction to invest in [an

15  asset] was imprudent or that the fiduciaries' direction to make that investment was based on an

16  inadequate investigation, then [the trustee] would not be immune from liability because it would

17  have knowingly carried out a direction that was contrary to ERISA."  *Id*., 1999 WL 528181 at *10.

18  *See also In re WorldCom, Inc.*, 263 F. Supp. 2d 745, 761 (S.D.N.Y.2003) (holding that a directed

19  trustee "retained the discretion, and indeed the obligation, to follow only 'proper' directions of the

20  [named fiduciary], directions which were made in accordance with the terms of the [Plan] and which

21  were not 'contrary to' the ERISA statute").  *See Wright v. Oregon Metallurgical Corp*, 360 F.3d at

22  1102 ("A directed trustee is subject only to the 'proper directions' of the named fiduciary.") (citing

23  29 U.S.C. § 1103(a)(1)).

24  The Secretary has clearly alleged that Fidiam and Gallucci followed the direction of CFI to

25  purchase EVI's stock even though the "appraisal of the stock was flawed and inaccurate," and the

26  direction would cause "the ESOP to pay more that fair market value for the stock," in violation of

27  the Plan Document and § 1108(e) of the statute.  Compl. ¶ 43.  She alleges that these two

28  Defendants "knew about the $12 million agreement with Defendant Webb that reduced the value of

EVI's stock," "knew. . . of the problems with the November 21, 2002 appraisal," and yet "they allowed the stock purchase to occur." *Id.* ¶ 44.  The Secretary's complaint, therefore, presents a valid cause of action against Plan Trustees Fidiam and Gallucci even though they followed CFI's direction to purchase EVI's stock on November 21, 2002, because they knew that carrying out the direction would cause the ESOP to pay more than "adequate consideration" for the stock in violation of ERISA and the 2002 Plan Document.

c.   <u>Investment Manager</u>

Fidiam and Gallucci also argue that their appointment of CFI as an investment manager for the Plan also absolves them of fiduciary liability connected to the funding of the ESOP.  They contend that § 1102(c)(3)[7] and the terms of the Parrot Cellular ESOP permit them "to designate persons other than named fiduciaries to carry out fiduciary responsibilities."  Having named CFI as the plan's investment manager, they argue that they are immune from liability for CFI's acts under § 1105(d)(1), which provides:

> If an investment manager or managers have been appointed under section 1102(c)(3) of this title, then, notwithstanding subsections (a)(2) and (3) and subsection (b) of this section, no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager.

29 U.S.C. § 1105 (d)(1).

While the appointment of an investment manager under § 1102(c)(3) does shield plan trustees from fiduciary liability for certain acts, it does not totally extinguish their fiduciary duties.  As noted above, § 1105(a)(1) imposes co-fiduciary liability for breaches committed by other plan fiduciaries when one "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach."  Subsections (a)(2) and (a)(3) impose co-fiduciary liability in two additional situations, where:

---

[7]  This provision states that "[a]ny employee benefit plan may provide--that a person who is a named fiduciary with respect to control or management of the assets of the plan may appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of a plan."  *Id.*

United States District Court

For the Northern District of California

> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a)(2) and (a)(3).

By its terms, § 1105(d)(1) excludes trustee liability "for the acts and omissions" of an investment manager for conduct covered by "subsections (a)(2) and (3) and subsection (b) of this section." However, Congress omitted subsection (a)(1) from § 1105(d)(1)'s exclusion. "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir. 1972)); *see also Silvers v. Sony Pictures Entm't*, 402 F.3d 881, 885 (9th Cir. 2005) (en banc) ("The doctrine of *expressio unius est exclusio alterius* as applied to statutory interpretation creates a presumption that when a statute designates certain persons, things, or manners of operation, all omissions should be understood as exclusions." (internal quotation marks and citations omitted)).

Thus, under § 1105(d)(1), even though a trustee appoints an investment manager, that trustee may still be liable for the liability of another plan fiduciary "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach," 29 U.S.C. § 1105(a)(1), "[i]n addition to any liability which he may have under any other provisions of this part [§§ 1101-1114]," 29 U.S.C. § 1105(a).

The Secretary's complaint alleges that Fidiam and Gallucci followed the direction of CFI to purchase EVI's stock even though they knew that to do so would violate the 2002 Plan Document and § 1108(e) of the statute. *See* Compl. ¶ 43-44. As such, they participated knowingly in an act that breached the fiduciary duty to acquire company stock for "adequate consideration." The complaint thus presents a valid cause of action against Plan Trustees Fidiam and Gallucci insofar as

United States District Court

For the Northern District of California

1  she alleges that they knowingly allowed the ESOP to pay more than fair market value for EVI's

2  stock on November 21, 2002.

3                  d.    <u>Monitoring Duties</u>

4         Finally, Fidiam and Gallucci, joined on this argument by Webb, assert that having appointed

5  CFI as an investment manager under § 1102(c)(3), and having appointed Fidiam and Gallucci as the

6  sole trustees of the Plan Committee, are all three relieved of any duty to monitor CFI's performance

7  as members of EVI's Board of Directors, and, for Webb, of any duty to monitor the Plan

8  Committee's performance.  However, as with appointing an investment manager or serving as a

9  directed trustee, the appointment of third party fiduciaries tasked with carrying out elements of an

10  ERISA plan does not wholly extinguish a fiduciary's duty to the plan or its beneficiaries.

11         The Ninth Circuit has "recognized that where members of an employer's board of directors

12  have responsibility for the appointment and removal of ERISA trustees, those directors are

13  themselves subject to ERISA fiduciary duties, albeit only with respect to trustee selection and

14  retention." *Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (citing *Batchelor v. Oak Hill*

15  *Med. Group*, 870 F.2d 1446, 1448–49 (9th Cir.1989)).  In *Batchelor v. Oak Hill Med Group*, in

16  noting "the duty regarding selection and retention of plan managers," the court observed,

17  "Imposition of a limited duty to safeguard employees' ERISA contributions intended for an ERISA

18  plan, where a third party's control has placed those funds at risk, comports with Congress' explicit

19  intent that courts will interpret the prudent man rule and other fiduciary standards bearing in mind

20  the special nature and purposes of employee benefit plans intended to be effectuated by the Act."

21  870 F.2d at 1449 (quoting H.R.Rep. No. 533, 93rd Cong., 2d Sess., reprinted in 1974 U.S. Code

22  Cong. & Admin. News 4639, 4650) (internal quotation marks omitted).  Other Ninth Circuit and

23  district court cases follow *Batchelor* in assigning this duty to members of a Board of Directors.  *See*

24  *e.g. Johnson v. Couturier*, 572 F.3d 1067, 1076 (9th Cir. 2009) (Liability for breach of fiduciary

25  duties extends to Board of Directors who "served as ERISA fiduciaries with respect to appointment

26  and removal of ESOP trustees."); *Carich v. James River Corp.*, 958 F.2d 861, 863 (9th Cir. 1992)

27  (risk of losses to plan due to delay caused by engagement of new plan administrator "is a risk...to be

28  borne by the party responsible for choosing the administrators, not a risk to be borne by a plan

United States District Court

For the Northern District of California

participant."); *In re Washington Mut., Inc. Sec., Derivative & ERISA Litig.*, 2:08-MD-1919 MJP, 2009 WL 3246994 at * 10-11 (W.D. Wash. Oct. 5, 2009) ("When an individual has the authority to appoint a fiduciary, that individual is a fiduciary with respect to the appointment") (Denying board of director defendants' motion to dismiss where plaintiffs allege directors failed to supply plan administrator with "necessary information to make informed decisions.").

Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their performance. *See In re Calpine Corp.*, No. 03–1685, 2005 WL 1431506, at *3 (N.D. Cal. Mar. 31, 2005) (noting that the "power of appointment gives rise to a limited duty to monitor"). Thus, the U.S. Department of Labor's implementing regulations for ERISA acknowledge that a fiduciary may be held liable for breach flowing from their decision to select and retain ERISA plan fiduciaries. *See* 29 C.F.R. § 2509.75–8 Questions and answers relating to fiduciary responsibility under the Employee Retirement Income Security Act of 1974.[8]  Further, the regulations acknowledge a continuing fiduciary duty to *monitor* the performance of those fiduciaries.  *See id.*[9]  In the instant

---

[8]  29 C.F.R. § 2509.75–8, subsection D-4 provides as follows:

> Q: In the case of a plan established and maintained by an employer, are members of the board of directors of the employer fiduciaries with respect to the plan?

> A: Members of the board of directors of an employer which maintains an employee benefit plan will be fiduciaries only to the extent that they have responsibility for the functions described in section 3(21)(A) of the Act. For example, the board of directors may be responsible for the selection and retention of plan fiduciaries. In such a case, members of the board of directors exercise "discretionary authority or discretionary control respecting management of such plan" and are, therefore, fiduciaries with respect to the plan. However, their responsibility, and, consequently, their liability, is limited to the selection and retention of fiduciaries (apart from co-fiduciary liability arising under circumstances described in section 405(a) of the Act). In addition, if the directors are made named fiduciaries of the plan, their liability may be limited pursuant to a procedure provided for in the plan instrument for the allocation of fiduciary responsibilities among named fiduciaries or for the designation of persons other than named fiduciaries to carry out fiduciary responsibilities, as provided in section 405(c)(2).

[9]  29 C.F.R. § 2509.75–8, subsection FR-17 provides as follows:

> Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries with respect to these

United States District Court
For the Northern District of California

1  case, the 2002 Plan Documents expressly assign to EVI's Board of Directors and the Plan

2  Committee the duty of "[p]eriodically reviewing the performance of the Trustee, members of the

3  Committee, persons to whom duties have been allocated or delegated and any advisers

4  appointed . . ." as well as a duty to "[review] periodically any allocation or delegation of duties and

5  responsibilities and any appointment of advisers."  Gallucci Decl., Ex. A at 55-56.

6      Defendants, in their motions, try to escape potential liability for failing to monitor CFI's

7  performance by arguing that Department of Labor Field Assistance Bulletin 2004-03 absolves them

8  of the responsibility to independently evaluate the findings of other plan fiduciaries.  *See e.g.* Fidiam

9  and Gallucci's Reply at 12 ("The directed trustee does not have an obligation to duplicate or second-

10  guess the work of the plan fiduciaries that have discretionary authority over the management of plan

11  assets . . .") (quoting Field Assistance Bulletin 2004-03).  In doing so, they overlook the fact that the

12  Field Assistance Bulletin at issue addresses transactions involving publically traded stock that is

13  valued on the open market, not stock of a closely held private corporation.  *See* Fidiam and

14  Gallucci's Motion at 24; Pl.'s Opp. at 13.  The price of a publically traded stock is assumed to be

15  fair and accurate because it is vetted in the open market and not subject to over-valuation by an

16  appraiser.  Thus, this particular Field Assistance Bulletin is inapplicable to the case at bar.

17      Defendants also misconstrue the Ninth Circuit's holding in *Arizona State Carpenters*

18  *Pension Trust Fund v. Citibank*, 125 F.3d 715, 722 (9th Cir. 1997), and attempt to transform its

19  limited holding into a more broad pronouncement that "a directed trustee only has ministerial

20  responsibilities."  *See e.g.* Fidiam and Gallucci's Reply at 14.  In *Arizona State Carpenters*, the

21  Ninth Circuit ruled that Citibank was not an ERISA fiduciary with respect to the plan at issue

22  _____

23  appointments?

24  A: At reasonable intervals the performance of trustees and other
   fiduciaries should be *reviewed by the appointing fiduciary* in such

25  manner as may be reasonably expected to ensure that their
   performance has been in compliance with the terms of the plan and

26  statutory standards, and satisfies the needs of the plan. No single
   procedure will be appropriate in all cases; the procedure adopted may

27  vary in accordance with the nature of the plan and other facts and
   circumstances relevant to the choice of the procedure.

28  (Emphasis added.)

United States District Court

For the Northern District of California

1    because it lacked "independent authority or managerial responsibility over the operation or

2    administration" of certain ERISA controlled funds. *Id.*, 125 F.3d at 721.  In that case, the documents

3    governing that ERISA plan "expressly limit[ed] Citibank's responsibilities and authority, such that

4    Citibank had no duty to furnish advice with respect to investments, no responsibility for monies or

5    property paid upon written authorization of the Trustees, and no power or duty to determine the

6    rights or benefits of anyone claiming an interest in the Trust Fund." *Id.* at 721.  The court observed

7    how "[t]he Agreements [did] not purport to delegate any fiduciary duty to Citibank, nor [did] they

8    provide Citibank with independent authority or managerial responsibility over the operation or

9    administration of the Trust Funds." *Id.*

10          The arrangement in *Arizona State Carpenters* is readily distinguishable from the role that all

11   three Defendants in this case occupied vis-a-vis CFI.  As members of the Plan Committee (Fidiam

12   and Gallucci), and as a members of EVI's Board of Directors (Fidiam, Gallucci, and Webb), all

13   three Defendants were explicitly directed to oversee and monitor the performance of CFI under the

14   2002 Plan Document.  *See* Gallucci Decl. Ex. A at 55-56.  Both relevant Ninth Circuit precedent and

15   sections of the 2002 Plan Documents contemplate an oversight role for EVI's Board of Directors

16   and the Plan Committee.  This failure to monitor CFI's performance is precisely where the

17   Secretary's complaint alleges liability for fiduciary breach.  She alleges that "Defendants Webb,

18   Fidiam, and Gallucci failed to prudently monitor, oversee or remove the independent fiduciary, CFI,

19   which they appointed or had responsibility to oversee."  Compl. ¶ 61.  In the case of Fidiam and

20   Gallucci, she alleges that "by improperly acquiescing in and accepting [] improper direction from

21   the independent fiduciary to purchase EVI stock . . . for more than fair market value" when they

22   knew about the deferred compensation agreement and payment, the Defendants failed to carry out

23   their duty of oversight and monitoring.  *Id.*

24          The Court rejects Defendants' argument that appointment of CFI wholly insulates them from

25   fiduciary liability under ERISA.  Having appointed CFI as a fiduciary, EVI's Board of Directors and

26   the ESOP's Trustees undertook a duty to review the performance of their appointed fiduciary.  *See*

27   Gallucci Decl. Ex. A at 55.  Thus, the Secretary's complaint presents a valid cause of action against

28   Webb, Fidiam, and Gallucci for their alleged failure to prudently monitor CFI's performance insofar

United States District Court

For the Northern District of California

1   as they knowingly permitted CFI to overstate the value of EVI's stock and improperly directed the

2   ESOP to purchase EVI shares at more than fair market value.

3                      e.      Standard of Knowledge

4          During oral argument, the parties had difficulty articulating the appropriate standard of

5   knowledge required to establish a breach of fiduciary duty under these three avenues of ERISA

6   liability.  The Court finds that the "knowing" standard discussed herein is the appropriate standard.

7   As discussed in detail above, employing a "knowing" standard for all three theories of liability

8   examined here is both consistent with the relevant case law, and also follows the standard imposed

9   under ERISA for co-fiduciary liability.  *See* § 1105(a)(1) (liability for fiduciary who "participates

10  knowingly in, or knowingly undertakes to conceal . . . knowing such act or omission is a breach.").

11  Indeed, counsel for the Defendants acknowledged as much in argument when he stated that a

12  fiduciary who followed an improper direction from another fiduciary with knowledge that it violated

13  ERISA or the Plan would raise a "Red Flag."  The Court rejects the Secretary's argument that a

14  "known or should have known" standard ought to be adopted.  *See, e.g.* Compl. ¶ 44.  Such a

15  standard is largely duplicative of ERISA's "prudent man" standard for fiduciary conduct.  Its

16  adoption here, where fiduciaries have delegated some of their fiduciary duties to others, would

17  render both that delegation and ERISA's liability limiting provisions ineffective.

18         The Secretary's complaint clearly satisfies this knowledge standard by alleging, among other

19  things, that "Defendants Webb, Fidiam and Gallucci knew about the $12 million agreement with

20  Defendant Webb that reduced the value of EVI's stock . . . knew. . . of the problems with the

21  November 21, 2002 appraisal . . . [and] [y]et they allowed the stock purchase to occur. . ."  Compl. ¶

22  44;  *see also* Compl ¶¶ 40-43, 60-61, 63.  Therefore, Defendants' motions to dismiss based on their

23  serving as "directed trustees," their appointment of an investment manager, and their argument that

24  they had no duty to monitor fiduciaries they appointed is hereby denied.

25  D.     Parrot Cellular ESOP's Motion to Dismiss

26         The ESOP's motion to dismiss argues that the Secretary's suit cannot properly name the

27  ESOP as defendants.  In her Complaint, the Secretary added the ESOP as a "party Defendant

28  pursuant to Rule 19(a), Fed. R. Civ. P., solely to assure that complete relief can be granted."  Compl.

¶ 10.  The ESOP moved to dismiss itself from this action on two grounds:  (1) that as a non-fiduciary party this Court lacks subject matter jurisdiction under ERISA to hear a suit against it, and therefore it should be dismissed pursuant to Rule 12(b)(1), and (2) that it need not be joined under Rule 19(a)(1) in order for the parties to be accorded complete relief.  *See* ESOP Motion (Docket No. 32).  The Court finds that both arguments are without merit.

Rule 12(b)(1) permits a party to assert by motion the defense that a court lacks subject matter jurisdiction over a claim for relief.  "Rule 12(b)(1) jurisdictional attacks can be either facial or factual."  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  The jurisdictional attack here is facial; thus the task for the Court is to is to assess whether a lack of federal jurisdiction appears from the face of the pleading itself.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

The ESOP Defendant argues that the Secretary's complaint advances a breach of fiduciary duty action against the ESOP itself, which, under 29 U.S.C. § 1002(9), is not a "person" subject to personal liability for such an action, and is "therefore[] not a proper defendant in an ERISA fiduciary breach claim."  ESOP Motion at 4.  This argument overlooks both the fact that the Secretary did not assert "that the ESOP is a fiduciary or that the ESOP committed any fiduciary breaches."  Pl.'s Opp. (Docket No. 45) at 3.  *See* Compl. ¶¶ 58-67 (complaint does not allege the ESOP breached a duty).  Although an ESOP is not itself a fiduciary, "[a]n employee benefit plan may sue or be sued under [ERISA] as an entity" under the statute, 29 U.S.C. § 1132 (d)(1).

The Secretary has named the ESOP because she claims it is necessary to obtain complete relief.  Paragraph 10 of the Complaint explicitly states that the ESOP was joined as a Defendant "solely to assure that complete relief can be granted."  Her Prayers for Relief are likely to impact administration of the ESOP, particularly paragraph 3 which asks this Court to enjoin "Defendants and all related parties from benefitting from any agreement that grants or purports to grant them

1  indemnification from EVI or the Plan or to absolve them of liability for their fiduciary breaches."

2  Compl. at 21.  Fed. R. Civ. P. 19(a)(1) provides:

3            Persons Required to Be Joined if Feasible.  (1) *Required Party.* A
             person who is subject to service of process and whose joinder will not
4            deprive the court of subject-matter jurisdiction must be joined as a
             party if:  (A) in that person's absence, the court cannot accord
5            complete relief among existing parties; . . .

6  A party "can be joined under Rule 19 in order to subject it, under principles of res judicata, to the

7  'minor and ancillary' effects of a judgment."  *E.E.O.C. v. Peabody W. Coal Co.*, 610 F.3d 1070,

8  1079 (9th Cir. 2010) (citing *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 399

9  (1982)).  This is what the Secretary's complaint aims to do.  Courts have approved of the Rule 19

10 joinder of ESOPs under circumstances similar to the case at bar.

11        In approving joinder, the Second Circuit in *Marshall v. Snyder*, 572 F.2d 894, 897 (2nd Cir.

12 1978), reasoned,

13           The [ERISA] plans, however, are clearly proper if not indispensable
             parties to the proceeding, and it would appear that if, as may be
14           unavoidable, the Secretary will press for very broad relief affecting
             many aspects of the three plans and their administration, they should
15           be joined as proper parties defendant which may later become
             necessary parties. Joinder of the plans as parties will provide assurance
16           that complete relief can be accorded among those already parties . . .
             and it is clear, of course, that the plans may properly be joined under
17           Rule 20(a) in any case, even though they may not be interested in
             obtaining or in defending against all of the relief demanded.
18

19 *Marshall v. Snyder*, 572 F.2d 894, 897 (2nd Cir. 1978).  Ninth Circuit precedent is not to the

20 contrary.  In *Acosta v. Pac. Enterprises*, 950 F.2d 611, 618 (9th Cir. 1991), the Ninth Circuit stated

21 that while an ERISA "plan itself cannot be sued for breach of fiduciary duty, this "does not

22 inexorably lead to the conclusion that a plan cannot be properly named in a suit alleging breach of

23 fiduciary duty.  Indeed, the court concluded "even though Acosta cannot sue the SoCal Gas Plan for

24 breach of fiduciary duty *per se,* he may, as he has done here, join the Plan in his action for breach of

25 fiduciary duty in order that he may obtain the relief sought."  *Id.* at 618.

26        Therefore, the Court rejects Defendant's argument that the Parrot Cellular ESOP cannot be

27 joined to this action under Rule 19.

28

United States District Court

For the Northern District of California

E.      Dennis Webb's Motion to Dismiss

Defendant Dennis Webb's motion to dismiss asks this Court to dismiss the Secretary's complaint in its entirety as it relates to him for failure to state a claim under Rule 12(b)(6).  Webb's Motion at 25.  Webb served as an "officer and director" of EVI, and was "Chairman of the EVI Board of Directors" during the time period relevant to this action.  Compl. ¶ 7.  As discussed above, given his position and the terms of the Plan, Webb is charged with violating certain fiduciary duties with respect to the ESOP.  His motion repeats many of the prior arguments presented by Fidiam and Gallucci in Fidiam & Gallucci's Motion to Dismiss.  Thus, the Court need not re-examine whether Webb's fiduciary obligations attach to the purchase of EVI stock on November 21, 2002, nor whether, as a member of the Board of Directors, Webb had a duty to monitor the Plan Trustees and CFI's performance during the acquisition of EVI stock for the ESOP.  The complaint also contains sufficient allegations to state a breach by Webb of § 1105(a)(1) for participating knowingly in the act or omission of another fiduciary with the knowledge that such an act violates ERISA.  *See e.g.* Compl. ¶ 44 (alleging that Webb "knew about the $12 million agreement with Defendant Webb that reduced the value of EVI's stock . . . knew. . . of the problems with the November 21, 2002 appraisal . . . [and] [y]et they allowed the stock purchase to occur. . .").  As discussed above, the appointment of CFI as an investment manager by the EVI Board does not preclude liability under § 1105(a)(1) since § 1105(d)(1) which limits liability of a fiduciary upon appointment of an investment manager affords immunity only for violations of § 1105(a)(2) and (3), not § 1105(a)(1).

Webb advances two arguments in support of his contention that the Secretary's complaint is deficient under Rule 12(b)(6).  First, he argues that he "was not a fiduciary with respect to the challenged conduct because [he] lacked any discretion or control over the valuation and purchase of EVI stock by the ESOP."  Webb's Motion at 24.  As discussed *supra*, by virtue of his position on the Board of Directors and pursuant to the 2002 Plan Document, Webb had a degree of authority, control and hence responsibility over the decisions at issue here.

Further, the Secretary alleges that Webb had an additional duty to take steps to counteract any breach CFI and his co-fiduciaries may have committed *after* the conclusion of the stock purchase, including potential shareholder actions to recover all or a portion of the $16 million in

United States District Court

For the Northern District of California

deferred compensation EVI agreed to pay to him.  *See* Compl. ¶ 58.  Although § 1109(b) limits fiduciary duties as to breach committed before the fiduciary is appointed, once an individual becomes a fiduciary, he or she has an affirmative duty to investigate risks to ERISA plan assets that may have occurred prior to their becoming a fiduciary, even if they resulted from another party's fiduciary breach.  *See Chao v. Merino*, 452 F.3d 174, 182 (2nd Cir. 2006) ("If a fiduciary was aware of a risk to [an ERISA fund, he may be held liable for failing to investigate fully the means of protecting the fund from that risk.").  In any event, the complaint alleges that the ESOP transaction occurred while (not before) Webb was a fiduciary.

Webb's second argument charges the Secretary with failing to make an "allegation that Webb had knowledge of any fiduciary breach by any other party, as is required for co-fiduciary liability under ERISA."  Webb's Motion at 24.  The text of the Secretary's complaint flatly contradicts Webb's position.  *See e.g.* Compl. ¶ 44.[10]

Finally, at oral argument, counsel for the Secretary advanced for the first time a new theory of fiduciary liability for Defendant Webb based on ERISA's § 1106.  Counsel argued that § 1106(b)(3)[11] prohibited Webb from receiving any deferred compensation from EVI, independent of whether the ESOP had paid "adequate consideration" when it acquired Webb's shares, because

---

[10]  This paragraph of the Complaint states as follows:

> Defendants Webb, Fidiam and Gallucci knew about the $12 million agreement with Defendant Webb that reduced the value of EVI's stock, had a duty to monitor the independent fiduciary, and knew or should have known of problems with the November 21, 2002 appraisal, including the use of inappropriate companies as comparables, the use of overly optimistic projections of future earnings and profitability, the failure to account for the $12 million agreement, and the lack of explanation in the [valuation] Report.  Yet, they allowed the stock purchase to occur, for the benefit of Defendant Webb and his son, who immediately received a total of more than $28.3 million in cash and notes for their stock, in addition to Defendant Webb's earlier $4 million payment, his more than $1.55 million annual salary for 2002, and his deferred compensation of $12 million.

Compl. ¶ 44.

[11]  Section 1106(b)(3) prohibits transactions between a plan and a fiduciary  who "receive[s] any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

**United States District Court**
For the Northern District of California

those deferred compensation arrangements were executed "in connection with" plan assets, and §

1108's ESOP exception does not countermand § 1106(b)(3)'s prohibition of this type of fiduciary

transaction.  Since the Defendants have not had a chance to respond to this argument, the Court will

not consider it at this time. *See Carroll v. Nakatani*, 342 F.3d 934, 942 (9th Cir.2003) (holding that

a court need not review arguments not specifically and distinctly raised in a party's opening brief).

The Court does note, however, that this argument potentially stretches the language of § 1106(b)'s

prohibition to include business decisions of the sponsoring corporation outside of the ESOP and

prior to its funding.  It is far from obvious that such business transactions involving assets not then

belonging to the ESOP may be considered transactions "in connection with" the ESOP for purposes

of § 1106(b).  Such an elastic interpretation of § 1106(b) would appear to exceed the strict

prophylactic proscriptions of § 1106(b) which are grounded in the need to protect Plan assets.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DENIES** all three motions to dismiss in their entirety.

Neither Fidiam & Gallucci's Motion nor Webb's Motion adequately demonstrate that the

Secretary's complaint fails to state a cause of action under Rule 12(b)(6).  Nor does the ESOP

Motion show that the Parrot Cellular ESOP cannot properly be joined to this action to afford

complete relief among the parties.

This order disposes of Docket Nos. 18, 32, and 35.


IT IS SO ORDERED.


Dated:  September 26, 2012

_____
EDWARD M. CHEN
United States District Judge

30